SEATS v. CONTINENTAL AIRLINES Mr. Nadel. Good morning, Your Honor, and may it please the Court. I'd like to follow the order of the Gray brief and begin with the 869 Sets of Seats patent, because I think that based on the brief, that issue can be easily resolved first. The 869 patent is different from the other patents in this case. The other patents are about individual seats, and the 869 patent is about sets of seats. Seats was entitled to Jane Holden. Can a set include one item, just one item? A set can include one item, but a set cannot see one item. And you see this in the reply brief, where we show the imprinting ticket map, their seat map, where there's a section of seats highlighted, and within the section, there's only one available seat. And that is an example of a set including only one available seat. Well, you said in the appendix, I guess, in your opening claim construction brief, that a set is a set. This term will be familiar to the jury, and needs no further construction. A set can include one, or more than one item. Here, a seat is one seat. That's exactly right, Your Honor. So a set can be one seat. No, Your Honor, a set can include one seat. And the difference between including one seat and being one seat is? I think the best place to look to illustrate the difference, Your Honor, is in the reply brief, in the gray brief, if you look at... If you look in the gray brief on page six. Right. There you see an infringing seat map from Ticketmaster, and you see a set. The mouse is hovering over a set, and the seat map is providing information about that set. That's the area in red. That's right. And here, there's only one available seat. That's exactly correct. Well, if you're right about seats, that it cannot be one seat, I mean, the claim language refers to not just seats, but available seats. It refers to sets of available seats. Available seats. That's correct. So, here you see a set of available seats, and there's only one available seat in the set. The key point is, there is a set... Well, so it's not a set of available seats, as you would have us construe it, because there's only one seat. There's only one available seat, and not multiple available seats. Well, what we said to the district court in the language that you quoted is that a set can include one or more seats. And this is a set that includes one or more seats. The problem with the Expedia prior art is that there was no set. There were only individual seats, as all the defendants' witnesses explained it. Figure 4B in the patent has a... It looks like a nightclub with a band playing up on the stage, and you have bar stools at the back. Each one of those is a set, right? The bar stools in the back, I think each one of those is actually a seat. Yes, and it's also labeled according to your labeling in your patent with a number that indicates it is a set, just like the tables with many seats are a set. And so a single bar stool seat at the club can be a set, according to your own patent figure. I don't think that's right, Your Honor. I think what the figure is showing is both individual seats, which are the bar stools at the back, and it's showing sets of seats. But it labels the sets with numbers, and the same numbers that you call sets are applied to groups and the single bar stool, thereby at least giving a pretty good indication, as Judge Crost has indicated, that a set can be one, not including one, your word game here. A set can be one, a single bar stool at the back of the bar when the band's playing. If a set were one, Your Honor, that would be the other seat's patents. The other seat's patents talk about the selection of individual seats. The 869 patent is about sets of seats. This whole argument was resolved on claim destruction. Well, is the figure 4B out of the 869 or out of some other patent? It's in all the patent terms. But is it in the 869 patent? Yes, it is. Can I just ask? I was a little confused by reviewing the record because, one, starting with the district court really didn't deal with this issue that you're presenting in blue and principally in gray, right? And except for the defendant's expert, I mean, nobody seems to be talking about anything in the record. Did you make the argument at trial that you're making before us with respect to claim 5? We did, Your Honor. And it was talked about and it's cited in, I think, both briefs. Dr. Jones, plaintiff's expert, talked about sets of seats. We use sets of seats to find infringement against the ticketing companies. It was not a big part of the defendant's invalidity case, and that's exactly the point. None of the fact witnesses the defendants put on talked about anything relating to sets, and their expert talked about it only briefly. Now, they point in their brief to what their expert said about sets of seats, and he said, well, there is sets of seats because I'm selecting one seat, I click on it, then the next seat, I click on it, then the third seat, I click on it, and boom, when I hit select, I've got a set. That's all they said about sets of seats. And did you cross-examine that witness to try to get your point across? Yeah, the witness was cross-examined, and what came out is there is no substantial evidence of two key elements here. Even if the expert was right that all of those things mean a set of seats, you don't have the sets mouseover element, which requires that the user be able to hover over a set and receive information about that set, and you don't have the sets database element, which requires that before any user does anything, there be information in the database about sets of seats. Those things were utterly missing. So, now, what about, let me ask you, do we have in the record here the arguments that were made to the jury on this issue? When I say in the record, I'm talking about in the appendix material that's before us. I don't think you have arguments that were made to the jury in either openings or closings specific to sets of seats, because I don't think that was the focus of the opening or closing argument, but I believe you do have everything that the expert said, both the defendant's expert talking about sets of seats to the extent that he did. You referred to your expert, Mr. Jones or Dr. Jones. Where is that in the appendix? I believe you'd find it on 1088 to 1094. Okay. Thank you. I know that Judge Prost asked this right at the beginning. I just don't remember your answer. Why isn't this all waived? You said right at the outset, 151, a set 51. No, Your Honor, we said that... And you said you weren't going to object, let it go to the jury. So why are we dealing with this at such length now? Okay, so I think this is important. We did not say a set could be one. We said... I know you're a little including point, but you said send it to the jury, they'll get it. Why isn't that waiving this all now? Your Honor, the including point is important because defendants say in their brief, I think exactly what you're asking about. They say, we said, a set consists of one seat. They use that word consists. Which under Figure 4B it seems to do. But the point I'm making now is the one I think Judge Prost started with, which is you sent it to the jury as is. Why are you now saying it's got a dented front fender? Well, we sent it to the jury plain and ordinary meaning. A set is a set. A set is a group. I think any ordinary reasonable juror would understand what that means. Well, did you tell that to the jury in your closing argument? Did you make the point that a set is a set? We're giving a set an ordinary meaning. A set is a group. Here are all the dictionary definitions of a set. Dr. Jones explained what a set was. Well, can you just refer to Dr. Jones' testimony? Could you tell me exactly? He said starting at 1088 or 1089. Do you have what you want to call out of his testimony that gets to your point? I'll do that in rebuttal, Your Honor. Well, most of your argument dealt with the corroboration point. Do you want to talk about that at all? And maybe I should help you and say it seems to me to have some real weaknesses because in the first place you have testimony of both Boas and Lutkin, and then you've got a 96 test spec document, and then you've got the videos, and then you've got the testing checklist in August. Boy, that sounds like a lot of corroboration. Well, I think this is the point that we attempted to make in the brief, Your Honor. What you've got is a lot of volume, but you don't actually have corroboration. Let me explain what I mean by volume. You've got the press release, the self-evaluations that they point out, all the news articles, and all of those corroborate the general testimony that there was an Expedia 2.0 product that was released in May 1997, and that that product had something called speed point pinpointer. None of them say anything about what's key here, which is the mouseover element. As to that, what you've got is oral testimony and then two documents, which you talked about in the videotape. But all of these other things we talked about, the 96 December document, the test spec, has a seat selection and a mouseover as part of the discussion. Right. So that's for the March 1997 system. Yes, and it comes a few months later. If they're doing it in 96, it tends to corroborate that it happened a couple months later, right? Well, I think what it shows, Your Honor, is that if you look at that document, it shows, and I'm talking about the March 1997 test specification, it shows that at that time the system wasn't working. And it wasn't a small thing, as defendants imply in their brief with a flicker. It was that a seat map took three to five minutes to load on the system. So we're asked to believe that in March 1997, Microsoft had a system where it took three to five minutes for a seat map to come up. And then in May 1997, Microsoft released this product, and yet no code exists showing that Microsoft released it. No pictures of the actual product exist that were released. No video exists that was released. So what's missing here in the rule of reason factors, one of the things that you look at. It's hard for us to remember, but I think everything took a long time to load in 97, didn't it? No, I don't think it took three to five minutes in 1997 and 1998. I do remember it was a time where everyone in law school had laptops. It wasn't an archaic age. And this was Microsoft, the world's largest software company in 1998. This was around the time that the Justice Department was suing them. But we're asked to believe that they did not retain any source code that would support defendants' point. And that's all that would take to resolve this issue. I'm not aware of any case that this court has affirmed a judgment of invalidity in a corroboration case without some physical evidence of the allegedly anticipating system. Well, what about the videos? Okay, so the videos are the same thing as with the March 1997 specification. They are before, and they depict a system that does not work. Now, that doesn't mean they didn't get to the invention first. But it does show the mouseover feature, right? That's correct. It shows the mouseover feature. And the videos are March 1997. They're what's described in the test specification. So we have the test specification showing... These videos are from a year earlier or so, aren't they? They're from... And then they probably made some changes in a year, don't you suppose? They're from March, and we know that they released a new body of code in April, and then a new body of code after that in May. And I do suppose they made changes, but I think it's just as reasonable to assume in that six-week period of time the change they made was removing the feature that they couldn't get working. I just want to take a second and talk about the jury instruction issue, because if the court doesn't grant Jamal on the corroboration issue, we're still entitled to a new trial, because the district court improperly instructed the jury that it could find anticipation for prior invention based on secret prior art. What happened here was the parties jointly proposed... Was there any evidence in the record that you could point to sufficient to create an issue of material fact with regard to suppression or concealment or abandonment? Yes, Your Honor, there is. And this is actually discussed in the Grave Reef. So if you look in the Grave Reef, and while we're looking, let me first point out that argument is a bit of a smoke screen, Your Honor, that they make because they moved for summary judgment, and summary judgment was denied. And when summary judgment was denied, it was their version to prove all of the elements of their case. Well, first, it wasn't their argument. It was my argument, and there was no intent to make it a... I'm sorry, Your Honor. They make that same argument in the brief, and I'm not saying that you were creating a smoke screen. On page 15 of the Grave Reef, there is a series of citations to the appendix to the trial record, starting with appendix 1089 and also appendix 905 and 956. And all of these are citations to the fact that the videos were confidential, that what was being tested was confidential, that when the people came in to appear on the videotapes, they had to sign nondisclosure agreements. So we know that the videotapes were secret, and I think that's undisputed in the record. The question is, was there overwhelming evidence, not just substantial evidence, because if it was only substantial evidence, then we don't even reach this issue. We have JMO. The question is, was there overwhelming evidence that the videos were made public, and the answer is not. They asked for an instruction that allowed the jury to find anticipation based on secret prior art. They argued to the jury in their closing argument, which is quoted at length, that they could find anticipation based on the videos. They said to the jury, remember all that evidence that the videos were secret? That's fine. That's okay. You can still invalidate the patents based on this art. We objected. We proposed a curative instruction, and there can be no doubt in these circumstances in particular that the instruction was prejudicial. Thank you, Mr. Neudel. Now, you've used your rebuttal time. We'll restore that. Would you give Mr. Lemley an additional three minutes? That'll keep the time even. I've got that all under... I was originally supposed to have 11. And you should now have 14. Thank you, Mr. Lemley. You may proceed. Chief Judge Rader, may it please the Court, Mark Lemley of the retongue brief on behalf of the defendants. Both Judge Davis and the jury in the Eastern District of Texas found the patent claims at issue here anticipated by Expedia's prior art flight reservation system. Plaintiff challenges those factual conclusions. The Fifth Circuit standard of review of those conclusions is extremely deferential. Appeals Court may not re-weigh the evidence or re-evaluate the credibility of witnesses, may reverse only if the evidence points so strongly and overwhelmingly in plaintiff's favor that no reasonable juror could return a contrary verdict. We've had a pretty tough rule on corroboration, Mr. Lemley. We have, as Mr. Neudel characterized, a lot of volume. Is there something here that really nails this down as corroborated? Absolutely, Your Honor. I mean, the evidence of corroboration is overwhelming. Not only do you have testimony of four witnesses who each independently corroborated each other, including the person who tested the system, the person who wrote the code, and people who received it. But that cuts against them a little bit on the corroboration rule. If they're interested, we tend to discount them a bit. But neither Mr. Broas nor Mr. Levette can work for a defendant in this case anymore. They are not interested. They have no financial income. But they did at the time. And they have a stake in saying, I did it. That's possible, Your Honor. Although, I think even there, there's good evidence of the credibility of the witnesses. Mr. Lubetkin drew the system from memory 15 years later before he was shown any of the refreshing documents, suggesting his memory hasn't faded. He's not merely sort of showing up for trial. In any event, there is plenty of documentary evidence. The Expedia test specification document, listing what's going to go into the product, expressly describes Moussover with, quote, bubble text. You have the video, which actually shows the Moussover working, albeit imperfectly in the test area. You have the testing verification document, the checklist, that expressly describes Moussover with bubble text. You have Mr. Broas' August 1997 written performance review, listing seat pinpointer as one of the things he was responsible for in the new product, and says, quote, fortunately, we got things working, unquote. And you have Mr. Lubetkin's performance review from August 1997, which indicates that the seat pinpointer was completed and that, quote, all of those features are now available on the website, unquote. Now, there's plenty of other evidence. There's continental evidence that they received this, that it had seat pinpointer. There were publications that talk about this as an exciting new feature. In any event, on the reply brief, as I understand it, the argument that plaintiffs now make is not, there was no system that had Moussover functionality. It's entirely about abandonment, suppression, or concealment. That was their burden of production. And they came forward with no evidence whatsoever to suggest that this information was not. Well, what they say in their brief is that they presented substantial evidence that the test system was undisputably secret and confidential, as were the studies, the videotapes themselves, and the specifications. Is that correct? It's correct until it was released publicly in May of 1997. So there was no question, I think, as of the reply brief. Until it was released. Expedia 2.0, which included the seat pinpointer functionality. Excuse me, we're vibrating a little bit here. But what about the tests themselves, the usability studies, the videotapes? Those were never released. The videotapes were never released. That's right. They are evidence to corroborate the public release of the product. We know that product was sold to Continental. We have documentary evidence. We have evidence from early 1998 asking for corrections to the product, to the seat pinpointer feature. All of the evidence about the early release, about the testing, is corroborated. So you're kind of saying the argument is kind of an aside argument on the 102G. Right. That once you've released the Expedia, which was clearly prior art in May of 1997, then any issues with respect to the confidentiality of the stuff that preceded it has no relevance here. I think that's exactly right, Your Honor. And I also think that that helps us dispose of the jury instructions. That's what I'm telling you. Okay. So let me call one thing out. At the very end of his argument, Mr. Nadel pointed to the smokescreen idea, the idea that we tried to persuade the jury that private use was okay. That is, with all due respect, and I don't say this lightly, a deliberate mischaracterization of the record. In their reply brief at 17, the plaintiffs put a full-page block quote from the closing argument of Mr. Melsheimer. Towards the end of that quote, this includes the smokescreen language, towards the end of that quote, you'll notice an ellipsis. If you go back to the actual record at A1151, here's what they ellipsed out. This is the sentence, public use is not an issue. Public use of smokescreen, public use is not an issue. Right before that, quote, so again, so again, that's not an issue. In the paragraphs they chose to omit, here's what Mr. Melsheimer said. Quote, but the fact is, this invention wasn't kept private. It was made public when they sold it to Continental and when they released it, unquote. He then immediately after the smokescreen language goes on to say, quote, this invalidity law, the law the court's giving you here, does indeed require public use and that's where all their arguments have been in this case that we can't prove what went public in May of 1997. That's the challenge they have offered and I submit to you that indeed we can prove it. He points to multiple exhibits, so those are all the evidence that we put forward that showed that it was in fact released, documentary evidence. Now let's go through it and he walks through the documentary evidence point by point. That's not a closing argument that's trying to sneak a private use in as anticipating. That's an argument that's focused on the very question plaintiff raises on appeal, the question of whether this functionality went public. Can you turn to the discussion we had on Claim 5? Certainly, Your Honor. Certainly, Your Honor. Because, I mean, the district court judge, as far as I can tell,  and in the brief, really didn't touch on all of the issues that were brought up then and are brought up now. That's correct, Your Honor. Assessive cease was a thoroughly minor issue in this trial. I think that's right. It was not mentioned in closing argument by either party. When you go look at the record citation that Mr. Nadel gave you for the evidence that their expert put, you'll find a page of discussion of Seth's database and exactly one question and answer with respect to Seth's mouseover feature. And that's on 1091 and then the top of 1092. And the only thing he says with respect to Seth's mouseover in the top of 1092, as I understand it, is what's your disagreement with Dr. Ryan? We disagree that the elements involved in mouseover are present in the public Expedia 2.0 system. Our disagreement stems primarily from the fact that I haven't seen evidence from the public system. For example, screenshots that show that mouseover was present. There's no argument, as I can tell in the record, of what they're now arguing. And I think there's a very good reason for that. They made exactly the contrary argument to the district court. They said in no uncertain terms, a set is a set, a set can include one or more than one item, here a seat or more than one seat. Mr. Nadel's effort to focus on the word include there I don't think can be persuasive because if that's true, I have no idea what one or more than one seat is doing in that sentence. If I understand what happened here, the parties each presented their positions on this set of available seats limitation. We see what the plaintiff argued and we have in the record what the defendants argued. And then the district court judge said I don't accept the defendant's limited ruling. This term doesn't need to be construed. I'm just going to have sets have its normal meaning for the jury. How does waiver play into that? Because the jury wasn't listening to what one side or the other said. The jury was just hearing sets has its ordinary meaning. What I would say, Your Honor, is the following. As a matter of plain construction, I think this argument is waived. They persuaded the district court not to construe the term. We ask for a construction that expressly included individual seats. They persuaded the district court not to construe the term and said, does everybody understand a set can include one or more than one? They now make exactly the opposite argument. Indeed, the contradiction is so bad that in their own reply brief, they call their own argument in the district court pure fiction. In no sense can a single seat be assessed. Under Abbott v. Sintron, you can't turn around and make an opposite plain construction argument. Now, that leaves them, I think, where they end up going in their 28J letter from last week, which is to say, this isn't really about plain construction at all. This is about substantial evidence. Is there substantial evidence of sets of seats? But once it's no longer a plain construction argument, the question is not, does this court think the construction of a set is including one or more than one is correct? The question is, could any reasonable juror left to their own devices conclude that a set could include one as well as more than one? And if so, I think this court should affirm. I would agree that you have, as I understand on this claim construction issue, you have two statements. You have the statement by the plaintiff saying, this term will be familiar to the jury and needs no construction. A set can include one or more than one item, here a seat or more than one seat. Then they say, at 96 and 95, defendants unduly limiting construction improperly seeks to rewrite the plain language interpret set as an individual seat or individual seats. So, they seem to be making both arguments there. So, I agree with that, Your Honor. I think there's some confusion there. On the other hand, I think it seems reasonably clear that what the plaintiff persuaded the district court to do was to throw all of this to the jury. And it wasn't... Well, then if it's thrown to the jury, what are we left with? What is the jury supposed to determine what a set is? Isn't it go by the normal dictionary? I think it has to go by its own plain meaning according to the district court's construction and they haven't challenged that construction, which they argued for. But the district court said a set. He didn't... Did the district court say anything to the jury about set? No, Your Honor. He said it's plain... It's ordinary meaning. So, where do we look for the ordinary meaning? Well, so, what I would suggest, Your Honor... You can look to the dictionary. You can look to a dictionary. What I would suggest, Your Honor, is that you can also look to the language of the patent itself. What about the figure 4B? Is that relevant? Absolutely, Your Honor. So, the only support that they point to in the specification for sets of available seats is figure 4B. Now, two things about figure 4B. First is, if you look at the bar stools in the back, as Judge Rader pointed out earlier, it includes a single seat numbered as one of the sets, suggesting that... That same numbering regime that you have in that picture. Exactly. Second, in their only textual description of figure 4B, here's what they said. And this is on A140. As he moves his mouse over individual seats, the seat number appears in the window at the bottom of the screen. And when he clicks on a seat, it is added to a running tally of the seats he has already selected. So, sets of available seats in the specification means I can pick a bunch as one group. I pick them one at a time. I mouse over them one at a time. They all go into this. That is exactly how the Expedia system works. I don't think there's any debate on that. I'm sorry for juggling on you because you're making your argument, but we only have limited time, so I have to kind of pipe up, I guess. Is the word... Do you think a seat, an individual seat, can be a set? So, I think the right way... So, the claim language here is actually which no one like this really paid a lot of attention to in the briefing. The claim language requires, quote, placing a mouse over one of the sets of available seats wherein the mouse over initiates a request for the current available seat information for seats that have not been previously taken to be displayed on the computer display of the user. Now, if he... If in line with that language you just read, if someone puts a mouse over one of the bar stools, is he mousing... Is that person, he or she, mousing over a set of available seats or does he just go to one of the bar stools? I guess it's S-100 is the bar stool at the end. I think under plaintiff's argument in the district court and under the specification, the answer is yes. I think one could reasonably differ over what that was the best definition, but this is a substantial evidence challenge. How would one seat though be a set of seats? Well, I... So, I think, Your Honor, I think the answer is in mathematics, a set could be any of a variety of things, right? It could be a zero, a null set. It could be a set that has only one thing in it at a time. In any event, the notable thing is that the way the Expedia system works is precisely the way the patent describes it, right? Which is we've got a group of seats and you mouse over one seat and that pops up. If you select it, it goes into the tally of seats you've selected, but you can select multiple seats in one transaction, put them all in the same tally and they will all show up in the same... But you can't do... There's that figure at page six of the reply brief that shows something, I guess it looks kind of like Carnegie Hall or something like that. Can you do what is shown... Can you do... Does Expedia 2.0 do what is shown in red in that drawing or diagram? No, Your Honor, and that's from a different defendant that they accused of infringement, but nothing in the patent showed that either, and it's not what the plaintiff argued for. Who is that defendant? Ticketmaster. But they're defendants. They are defendants in this case. So their theory, this claim applies only to some of the defendants and they are asserting it against people who do that, but that's not what the claim language said. This claim doesn't apply to any of the airlines. Correct. That's correct, Your Honor. Just going back to the question you raised about what you were discussing with Judge Schall about how there was no record evidence. The jury certainly didn't know the discussion that went on on claim construction with regard to claim five. So what evidence was there? I mean, your expert confirmed your view of what the definition of sets is, right? So that's right. He testified, he was asked are there sets of seats, and he said yes, and he explained the way Expedia works, which is there are a bunch of available seats. They're all on the map. I mouse over them and I select them. It's true that I select them one at a time, but they all go into a set. They are all put in the set database. So if I make a reservation for three people in seats 14 D, E, and F, and I mouse over and click each one when they're available, they all go into that group. So there was no question I think that that happened in the Expedia system, and the only question now on appeal, it was not really argued in the district court at all by plaintiffs, but on appeal, their argument is, well, that doesn't count as a set of available seats, because you've chosen them one by one, even though they all went into the same set. So one might surmise that the jury, even if they thought the ordinary meaning was unclear, or leaned towards a set being more than one item, would have heard that testimony and only that testimony with regard to a set of   Now, the plaintiffs have concluded that Expedia satisfied the limitation. For that matter, airlines have first-class sections and coach sections. They had, at the time, smoking sections and non-smoking sections, as some of the evidence in the record indicates, and those are truly sets of non-smoking  Now, I guess Mr. Jones Yes, their expert. their expert, and I guess there was a particular focus on 1090 through 1091. Where do you say did we find the Ryan testimony on this point? Certainly, Your Honor. The Ryan expert testimony is at 1016 to 1017 in the  And what he directed this to was the extent of the Jones testimony. That's right. And there was no argument from the jury one way or the other. Nor was there construction of the terms. The jury was left to their own devices. And  guess the question for this court is is there substantial evidence that the jury could have concluded that the system worked the way the patent originally said it worked. Thank you, Your Honor. Mr. Heinlein, you have four minutes. There's so many cell phones up here. Okay. If you can please the court, I'm Michael Heinlein with Thompson and Knight and I represent Airtram Airways. I'd like to make three points to show why this court should dismiss these claims against Airtram on the alternative grounds that Airtram did not have any anticipation or obviousness for conclusion then this is what we're left with as an alternative? Yes, Your Honor. The first point is  undisputed that the accused system was owned and operated by a third party called Navitaire. So if we were to affirm on the 3-6-1, the 8-6-6 and the 7-2-8 patents the ruling of the denial of JAMAL, we don't reach this point. That's correct, Your Honor.  have nothing to do with point five? The Cessna C patents? Yes. That's correct. So if you find the patents invalid then my argument is you don't have to listen to them. The three patents that you're concerned with are invalid? The airline patents. The airline patents, yes, Your Honor. Give us your argument. The first point is undisputed that Navitaire owned and operated the accused system. Dr. Jones admitted that his sole theory of infringement was that Airtrain somehow controlled Navitaire. But as Airtrain  its response brief, there's no evidence of the agency-type relationship this court requires defined by carrier's liability for infringement. Sheetz does not address or refute any of those arguments in its recovery. It simply provides a string site to appendix pages showing that there was a contract between Airtrain and Navitaire and that Navitaire removed the single feature from Airtrain's website and Airtrain's request. But as Airtrain explained in its response brief, neither of those pieces of evidence shows the required agency-type relationship. Therefore, there's no infringement by control. The second point is that there's absolutely no support for Sheetz's new claim in his reply on appeal here that Airtrain somehow made the accused system. Again, it's just a conclusory statement in Sheetz's brief accompanied by another string site to pages in the appendix, none of which show that Airtrain combined any of the elements of the accused system, much less all of the elements of the accused system, and none of which rebut the undisputed infringement of the accused system. Third and final point is that Sheetz points to no evidence that it met the intent requirement necessary to prove induced infringement. Sheetz doesn't dispute that in his reply, he doesn't dispute that the only evidence of inducement at trial was Dr. Jones' statement that defendants plural, not Airtrain in particular, but defendants as a group, quote, encouraged their customers to use the infringing system, end quote. But simply encouraging customers to use the system isn't enough. Under the Supreme Court's holding in Global Tech and under this Court's holding in the accused system. So there's no evidence, not even any argument in that reply, that Airtrain met this, that Airtrain had this necessary intent and knew that its customers were infringing. So Airtrain did not induce infringement. So in short, Airtrain respected the request that this Court hold that these claims against it should be dismissed on the alternative ground that Airtrain did not infringe. Thank you, Mr. Heinlein. Mr. Nadel. During Mr. Lemley's argument, Judge Shaw made an important point, which is that Claim 5 of the 869 patent doesn't apply to the airlines. That's important because it shows that we've been consistent, not just the claim, but the claims.  Judge Shaw said that the claim is not applicable to the airlines. And I think that's true. And Judge Shaw said that the claim is not applicable to the airlines.  what Judge Shaw said. The point is, we didn't sue the airlines for infringing Claim 5 of the 869 patent, or any of the 869 patent, because we've been consistent from when we filed the suit as to what sets of seats it means. It doesn't apply to airline maps, all of which, from the Expedia maps supposedly to airline maps today, are just mousing over a single seat and getting information about that seat. And the best evidence that our position has been consistent is cited on page 8 of the suit. And the only thing the jury heard about the argument that you're presenting today is this one answer, this five-line answer. I have seen no evidence on that, nothing describing how things were, for example, organized in the database to retreat from the database in such a way that would constitute a set of seats. Well, that's true in the context of anticipation, Your Honor, but there was also full infringement cases that were presented against the ticket companies in which the maps that are shown in the brief were shown to the jury, and it was explained what sets of seats means in the context of the patent. Mr. Nadel, this strikes me as a classic case of something that was really not an issue in the trial at all, now commanding a great deal of appellate attention. Do you think that's a fair way to proceed? Your Honor, I think it was a big issue in the trial, and it was a big issue post-trial. If you look back at the Jamal briefs, this was a focus the same way it is here. The fact that it is... Again, the post-trial, you're looking for something to question what the result was, but before that result, there were not great debates. This was not the focus, was it? There's a defendant that was only accused of infringing this patent and none of the others. The ticket companies were primarily accused on the sets of seat issue, and this was the focus of the infringement position. It wasn't the focus of the invalidity case because there's no evidence of invalidity. Mr. Lemley did not point you to anywhere where there's evidence that you could mouse over a set of seats and receive information about that set of seats. It's all individual seats in Expedia, and those are the other seats' patents. So even if the judgment could stand against those patents, it cannot stand against the 869 patent. Thank you. All right. Thank you very much.